**WACHOVIA BANK, N.A. and Wachovia Mortgage Corporation, Plaintiffs,**

v.

**Linda A. WATTERS, in her official capacity as Commissioner of the Michigan Office of Insurance and Financial Services, Defendant.**

No. 5:03–CV–105.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 30, 2004.

---

Lori McAllister, Dykema Gossett PLLC
(Lansing), Lansing, MI, for Wachovia

Bank, N.A., Wachovia Mortgage Corporation, plaintiffs.

John C. Scherbarth, MI Dept Attorney General, (Insurance/Banking), Insurance and Banking Division, Lansing, MI, for Linda A. Watters, in her official capacity as Commissioner of the Michigan Office of Insurance and Financial Services, defendant.

David L. Permut, Goodwin Procter LLP (DC), Washington, DC, for American Bankers Association, America's Community Bankers, Consumer Mortgage Coalition, Consumer Bankers Association, Electronic Financial Services Council, Financial Services Roundtable, The, Michigan Bankers Association.

Kathleen E. Keest, Iowa Department of Attorney General, Des Moines, IA, for William H. Pryor, Jr., Attorney General, State of Alabama, Gregg D. Renkes, Attorney General, State of Alaska, Terry Goddard, Attorney General, State of Arizona, Mike Beebe, Attorney General, State of Arkansas, Bill Lockyer, Attorney General, State of California, Ken Salazar, Attorney General, State of Colorado, Richard Blumenthal, Attorney General, State of Connecticut, M. Jane Brady, Attorney General, State of Delaware, Robert J. Spagnoletti, Corporation Counsel, District of Columbia, Charles J. Crist, Jr., Attorney General, State of Florida, Mark Recktenwald, Director, Office of Consumer Protection, Department of Commerce and Consumer Affairs, State of Hawaii, Lawrence G. Wasden, Attorney General, State of Idaho, Lisa Madigan, Attorney General, State of Illinois, Steve Carter, Attorney General, State of Indiana, Phill Kline, Attorney General, State of Kansas, Gregory D. Stumbo, Attorney General, Commonwealth of Kentucky, Charles C. Foti, Jr., Attorney General, State of Louisiana, G. Steven Rowe, Attorney General, State of Maine, J. Joseph Curran, Jr., Attorney General, State of Maryland, Thomas F. Reilly, Attorney General, State of Massachusetts, Mike Hatch, Attorney General, State of Minnesota, Jim Hood, Attorney General, State of Mississippi, Mike McGrath, Attorney General, State of Montana, Brian Sandoval, Attorney General, State of Nevada, Peter W. Heed, Attorney General, State of New Hampshire, Peter C. Harvey, Attorney General, State of New Jersey, Patricia A. Madrid, Attorney General, State of New Mexico, Eliot Spitzer, Attorney General, State of New York, Wayne Stenehjem, Attorney General, State of North Dakota, Jim Petro, Attorney General, State of Ohio, W.A. Drew Edmondson, Attorney General, State of Oklahoma, Hardy Myers, Attorney General, State of Oregon, Gerald J. Pappert, Attorney General, State of Pennsylvania, Larry Long, Attorney General, State of South Dakota, Paul Summers, Attorney General, State of Tennessee, William H. Sorrell, Attorney General, State of Vermont, Christine O. Gregoire, Attorney General, State of Washington, Darrell V. McGraw, Jr., Attorney General, State of West Virginia, Peggy A. Lautenschlager, Attorney General, State of Wisconsin, Patrick J. Crank, Attorney General, State of Wyoming.

Douglas B. Jordan, Office of the Comptroller of the Currency, Washington, DC, for Office of Comptroller of Currency, amicus.

Gregory L. McClelland, McClelland & Anderson LLP, Lansing, MI, for Nat. Ass'n of Realtors, Michigan Association of Realtors, amicus.

## *OPINION*

ROBERT HOLMES BELL, Chief Judge.

Plaintiffs Wachovia Bank, N.A. ("Wachovia Bank") and Wachovia Mortgage Company ("Wachovia Mortgage") (collectively

"Wachovia") seek declaratory and injunctive relief to prohibit the Commissioner of the Michigan Office of Insurance and Financial Services ("Commissioner") from attempting to interfere with the alleged exclusive visitorial rights of the Office of the Comptroller of the Currency ("OCC"). Plaintiffs contend that the state law restrictions at issue are preempted by the National Bank Act and by OCC regulations promulgated pursuant to its authority under the Act. Plaintiffs also contend that the State of Michigan's attempt to regulate Wachovia Mortgage violates 42 U.S.C. § 1983. Plaintiffs' have moved for summary judgment.[1]

## I.

Wachovia Bank is a national banking association chartered under the National Bank Act, 12 U.S.C. § 21 *et seq.* (Complaint ¶ 4). Wachovia Mortgage, previously named First Union Mortgage Corporation, originally registered to engage in the business of making first mortgage loans in Michigan under the Mortgage Brokers, Lenders and Servicers Licensing Act, Mich. Comp. Laws § 445.1656 *et seq.* On January 1,2003, Wachovia Mortgage became a wholly owned operating subsidiary of Wachovia Bank. Wachovia Mortgage is engaged in making first mortgaging loans in various states including Michigan. After July 1, 2003, Wachovia Mortgage also began to engage in the business of making secondary mortgage loans in Michigan.

On April 3, 2002, Wachovia Mortgage advised the State of Michigan that it was surrendering its lending registration for Michigan. The Commissioner responded with a letter advising Wachovia Mortgage that effective July 1, 2003, Wachovia Mortgage would no longer be authorized to conduct mortgage lending activities in Michigan. The Commissioner has not yet sought a cease and desist order in conjunction with its position that Wachovia Mortgage must register with the State of Michigan to engage in mortgage lending.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hanover Ins. Co. v. American Engineering Co.*, 33 F.3d 727, 730 (6th Cir.1994) (citing *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

1. Briefs amici curiae have been filed by the OCC; the American Bankers Association, America's Community Bankers, Consumer Mortgage Coalition, Consumer Bankers Association, Electronic Financial Services Counsel, the Financial Services Roundtable, and Michigan Bankers Association ("American Bankers Association"); and the Attorney Generals of Forty States and the District of Columbia ("State Attorneys General").

242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989).

## III.

The issue before this Court is whether the State of Michigan through its Office of Insurance and Financial Services may exercise visitorial powers over state-chartered operating subsidiaries of national banks. Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into the corporation's manner of conducting its business and to enforce laws and regulations. *First Union Nat'l Bank v. Burke,* 48 F.Supp.2d 132, 144 (D.Conn.1999). In the context of national banking, visitorial powers generally refer to the power to visit a national bank to examine its activities and its observance of applicable laws, and encompass any examination of a national bank's records relative to the conduct of its banking business as well as any enforcement action that may be undertaken for violations of law. *National City Bank of Indiana v. Boutris,* 2003 WL 21536818 (E.D.Cal.2003). Generally, national banks are free from any state visitorial powers. *See* 12 U.S.C. § 484(a).

### A. Michigan's Regulatory Scheme

The State of Michigan regulates the mortgage industry through two acts, the Mortgage Brokers, Lenders, & Servicers Licensing Act, MICH. COMP. LAW § 445.1651 *et seq.*, and the Secondary Mortgage Loan Act, MICH. COMP. LAW § 493.51 *et seq.* Under these statutes, Wachovia Mortgage is required to register with the State of Michigan, but is not required to obtain a license to operate in the state. *See* MICH. COMP. LAW §§ 445.1652, 493.52. Under Michigan's regulatory scheme, the state reserves the option to investigate a specific consumer complaint if the complaint is not otherwise being pursued by the OCC. *See* MICH. COMP. LAW § 445.1663(2) ("the commissioner . . . shall make no investigation of the complaint if the complaint is being adequately pursued by the appropriate federal regulatory authority."). The Michigan statutes also require a registrant to provide a financial statement annually, to pay an annual operating fee, to maintain certain documents, and to retain those documents for examination by the Commissioner. *See* MICH. COMP. LAW §§ 445.1657(2), 493.56a(2), 445.1658(1), 493.54, 445.1671, 493.68.

### B. The National Regulatory Scheme

National banks are federally chartered institutions created and governed by the National Bank Act ("the Act"), 12 U.S.C. § 21 *et seq.* Under the Act, national banks have the authority to receive deposits, loan money and exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 Seventh. Further, national banks are authorized to make, arrange and deal in loans secured by interests in real estate. 12 U.S.C. § 371. Under the Act, national banks are generally free from state visitorial powers. Section 484(a) provides that:

> No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised by Congress or by either House thereof or by any committee of Congress or of either House duly authorized. 12 U.S.C. § 484(a).

■ The National Bank Act is also the OCC's enabling statute, providing the OCC with broad supervision and enforcement power over national banks authorized under the Act. *See NationsBank of North*

*Carolina v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). Pursuant to this authority, the OCC has promulgated additional regulations pertaining to national bank operating subsidiaries. OCC regulations provide that a national bank may conduct through an operating subsidiary activities that are permissible for a national bank. 12 C.F.R. § 5.34(e)(1). In addition, the regulations provides that an operating subsidiary is subject to the OCC's visitorial authority to the same extent as a national bank. 12 C.F.R. § 5.34(e)(3). OCC regulations also provide that "[s]tate laws apply to national bank operating subsidiaries to the same extent that those laws apply to the parent national bank." 12 C.F.R. § 7.4006. Because § 484 prevents state visitorial authority to be exercised over national banks, the regulations extend this prohibition to national bank operating subsidiaries.

## C. The *Chevron* Analysis

The Commissioner argues that the OCC exceeded its authority by promulgating 12 C.F.R. § 7.4006, the regulation limiting the application of state laws to national bank operating subsidiaries to the same extent as they apply to national banks. The Commissioner contends that this regulation impermissibly expands the definition of "national bank" contrary to 12 U.S.C. §§ 221 and 221a. Thus, this Court must apply the *Chevron* test to review the agency's construction of the statute. *See Chevron U.S.A. v. National Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ Under the *Chevron* test, a court, reviewing an agency's construction of a statute which it administers, is confronted with two questions. *Id.* First, the court must determine whether Congress has directly spoken on the precise question at issue. *Id.* If Congress' intent is clear, then

the court as well as the agency must give effect to the unambiguous intent of Congress. *Id.*

■ If, however, the statute is silent or ambiguous with respect to the specific issue, the court must determine whether the agency's interpretation is based on a permissible construction of the statute. The fact that the regulation reviewed carries preemptive force does not alter this analysis. The reasonableness of the regulations does not depend on express congressional authorization to displace state law. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Because Wachovia and the Commissioner concede that Congress has not spoken on the instant question, this Court proceeds to determine whether the agency's interpretation is based on a permissible construction of the statute.

■ The Commissioner contends that the regulation impermissibly expands the definition of "national bank" to include state-chartered operating subsidiaries. Sections 221 and 221a set out definitions for the Federal Reserve System. Under Section 221a, an "affiliate" includes any non-bank corporation controlled or owned by a national bank. In conjunction, Section 481 provides for the examination of any national bank and its affiliates. 12 U.S.C. § 481. In contrast, Section 484 provides the OCC with exclusive visitorial powers over national banks. The Commissioner contends § 484's silence as to affiliates prevents the section from being applied to state-chartered operating subsidiaries.

The National Bank Act was enacted in the Civil War era. Clearly, at that time, operating subsidiaries were not contemplated as tools of national banks to carry out the business of banking. Only many decades later, in the 1960's, operating

subsidiaries were acknowledged as a legitimate mode for national banks to conduct banking. 69 F.R. 1895. Section 484's silence does not compel a specific result, it merely requires the application of the second step of the *Chevron* analysis. In addition, Section 484 is not the sole determinant of the agency's authority over Wachovia Mortgage. Section 24 Seventh which provides national banks powers incidental to the business of banking provides additional authority for the OCC regulations.

State Attorneys General; on behalf of the Commissioner, also argue that the OCC regulation at issue exceeds the agency's authority under 12 U.S.C. §§ 371(a) and 93a. Section 371(a) permits the OCC to issue rules imposing additional restrictions and requirements on real estate loans. State Attorneys General contends that 12 § 1828(*o*), which provides a criteria for uniform real estate lending standards, limits § 371(a)'s ability to impose restrictions that preempt state law. Under OCC regulation, one of the uniform lending standards requires national bank to adopt policies in compliance with all real estate related laws and regulations. 12 C.F.R. Part 34, Subpart D.App. A. On the basis of this regulation, State Attorneys General contend that Congress' subsequent passage of the Riegle–Neal Act was premised on its belief that states had the authority to regulate real estate loans made by national banks. Section 1828(*o*), however, does not require compliance with state laws. Arguably, the regulation promulgated by the OCC allows for such compliance.

■ Lastly, State Attorneys General argue that the OCC does not possess any independent power to preempt state laws under 12 U.S.C. § 93a. Section 93a provides:

> Except to the extent that authority to issue such rules and regulations has been expressly and exclusively granted to another regulatory agency, the Comptroller of the Currency is authorized to prescribe rules and regulations to carry out the responsibilities of the office except that the authority conferred by this section does not apply to section 36 of this title [the McFadden Act, which makes the power of national banks to branch subject to state law] or to securities activities of National Bank under the Act commonly known as the "Glass–Steagall Act."

12 U.S.C. § 93a. They contend that the OCC has no authority to promulgate 12 C.F.R. § 7.4006 because the statute does not expressly grant the OCC the power to promulgate regulations that preempt state law. State Attorneys General contend that under § 93a, the OCC cannot grant powers to national banks that they do not already possess under federal statutory law. Section 93a contains a broad grant of authority to promulgate regulations, including those that preempt state laws. *See Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 885 (D.C.Cir. 1983) ("the entire legislative scheme is one that contemplates the operation of state law only in the absence of federal law and where such state law does not conflict with the policies of the National Banking Act."). More importantly, an express Congressional authorization to displace state law is not required. *See Fidelity Fed. Sav. & Loan*, 458 U.S. at 154, 102 S.Ct. 3014.

The OCC holds broad and pervasive authority to regulate national banking associations. Under 12 U.S.C. § 1818, the OCC has the authority to conduct surveillance of national banks' compliance with any "law, rule, or regulation, or any condition imposed in writing by the agency," and to prevent any "unsafe or unsound practice" on the part of the bank. Under § 484, OCC maintains exclusive visitorial authority over national banks. Lastly, the OCC's authority extends to the regulation of na-

tional banks' powers that are incidental to the business of banking. *See* 12 U.S.C. § 24 Seventh. In light of this statutory authority, it was within the OCC's authority to promulgate 7.4006.

## B. Preemption

The Commissioner also contends the federal regulation should not preempt Michigan law because they do not conflict. The Commissioner argues that many of her visitorial powers cannot be exercised against a registrant under Michigan law. In addition, the Commissioner argues that a specific consumer complaint is pursued only if it is not otherwise being pursued by the OCC. MICH COMP. LAWS § 445.1663(2).

■■■ A state cannot regulate a national bank where doing so would prevent or significantly interfere with the national bank's exercise of its powers. *See Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 33–34, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. *See Fidelity Fed. Sav. & Loan,* 458 U.S. at 153, 102 S.Ct. 3014. Such a conflict arises when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* The relative importance to the State of its own law is not material when there is a conflict with a valid federal law. *Id.* Federal regulations have no less preemptive effect than federal statutes. *Id.*

■■■ The Commissioner understates the impact of the Michigan statutes. Under the Michigan statutes, Wachovia Mortgage must register, pay annual fees, file a financial statement annually, and submit to the Commissioner's general supervision and control. These requirements clearly interfere with its national bank powers to conduct the business of banking. *See* 12 U.S.C. 24 Seventh. Even the most limited aspects of state licensing requirements have been preempted because they created impermissible conditions upon the authority of a national bank to do business. *See Association of Banks in Insurance, Inc. v. Duryee,* 55 F.Supp.2d 799, 812 (S.D.Ohio 1999), *aff'd* 270 F.3d 397 (6th Cir.2001).

Preemption depends on the reasonableness of the OCC's interpretation of the statute, not on the merits of the state law policy underlying its regulatory scheme. Although Commissioner and State Attorneys General have raised legal challenges to the OCC regulation, the essence of their arguments have relied on the policy considerations which weigh in favor of state authority to regulate companies who conduct mortgage operations within its borders. A challenge based on the wisdom of an agency or the competing policy of the states must fail. *See Chevron* at 866, 104 S.Ct. 2778. It is not for this Court to weigh the relative merits of Michigan's state laws designed to protect mortgage consumers. *See Franklin Nat'l Bank v. New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954). Although the State of Michigan maintains an interest in protecting its citizens, those compelling policy reasons do not undermine the reasonableness of the OCC's regulation.

## C. The Tenth Amendment

■■■ The Commissioner argues that 12 C.F.R. § 7.4006 violates the Tenth Amendment because it essentially federalizes a state corporation by converting it into an instrumentality of federal law. In *Hopkins Federal Savings & Loan Ass'n v. Cleary,* 296 U.S. 315, 56 S.Ct. 235, 80 L.Ed. 251 (1935), the Supreme Court held that a federal law violated the Tenth Amendment to the extent that it permitted the conversion of state associations into

federal ones in contravention of the laws of their place of creation. In *Hopkins,* a federal law permitted a state savings and loan to convert into a federal entity with the approval of a simple majority of shareholders. *Id.* This law was in contravention of state corporate law, which had different requirements for winding up a state corporation. *Id.*

Unlike *Hopkins,* Congress assumed authority to regulate national banks under the Commerce Clause. The Tenth Amendment reserves to the states those rights not enumerated. *See* U.S. CONST. AMEND X. Because the Congress was at liberty to exercise this power under the Commerce Clause, the Tenth Amendment is not implicated.

### D. 42 U.S.C. § 1983

 Wachovia requests damages under 42 § 1983. In order to prevail under § 1983, the claim must meet three criteria, (1) that Congress intended the provision in question to benefit the plaintiff; (2) that the right protected by the statute is not so vague or amorphous that its enforcement would strain judicial competence; and (3) that the statute unambiguously imposes a binding obligation on the States. *Blessing v. Freestone,* 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Wachovia argues that 12 U.S.C. § 24 Seventh statute expressly grants a power, that the power is not so amorphous, and that the power is granted in mandatory and affirmative terms.

Wachovia's right based upon incidental powers is not a right cognizable under § 1983. Under § 1983, the violation must redress a violation of a federal right, not merely a violation of federal law. *Blessing* at 340, 117 S.Ct. 1353. The incidental powers of § 24 Seventh do not establish an unambiguously conferred right to be free from state visitorial authority. It is § 484 which extends the OCC's exclusive visitorial authority to national bank operating subsidiaries. This section, however, extends authority to the OCC, it does not grant a right to a national bank. The OCC regulatory scheme was "intended primarily for the benefit of the public and the commonwealth, not for the benefit of banks and bank directors." *See In re Franklin Nat. Bank Securities Litigation,* 445 F.Supp. 723, 731 (D.C.N.Y.1978) (reviewing the effect of visitation under § 481). Thus, Wachovia's § 1983 claim must fail.

### IV.

For the previously stated reasons, Wachovia's motion for summary judgment will be granted in part and denied in part and an order will be issued in accordance with this opinion.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (Docket # 15) is **GRANTED** in part and **DENIED** in part.

Plaintiff's claim for declaratory and injunctive relief is **GRANTED** and Plaintiff's claim under 42 U.S.C. § 1983 is **DENIED.**